Good morning, Your Honors. Isaac Grabman on behalf of Petitioner Oscar Loren-Delgado. Your Honors, this case should be remanded to the Board of Immigration Appeals to allow Oscar Loren to present evidence of his meritorious political asylum application and eligibility for adjustment of status, because the Board erred in two significant respects. First, the BAA abuses discretion by denying Petitioner's motion to reopen the case to present newly discovered evidence, namely of the murder of his fourth and final family member living in El Salvador, meaning that his entire family had now been exterminated. Second — Just a minute. Isn't that a problem? Unless we decide that the whole appeal can be reopened, that the appeal waiver should be undone, isn't the other issue logically prior? Because if the appeal waiver isn't undone, then he was making a motion to the BAA, which, as far as he was concerned, didn't have any authority — as far as they were concerned, didn't have anything pending before them that was actually an appeal, so they had nothing — no authority to reopen. That's what I understand their — their logic. Well, no, Your Honor. This circuit in Narion v. Ashcroft has held that when a motion to reopen asks for different relief than the appeal itself, it should be considered separately on the merits of the second section of the motion. But they thought they had no appeal. I don't think this is worth spending time on, because it seems to me the other one is logically prior. So I'm just suggesting we get to the other one. Certainly. Secondly, the BAA erred by failing to find that Lorin Delgado's waiver of his right to appeal was considered intelligent, where the immigration judge prejudged his asylum application, indicated that he was unlikely to grant it, misinformed Lorin of the consequences of accepting voluntary departure, and failed to develop the record regarding his eligibility for adjustment of status. Your Honors, an alien subject to deportation removal has a fundamental Fifth Amendment right to due process and a full and fair hearing. In the immigration context, this circuit has held that, quote, in DeCinto v. INS, quote, the role of the asylum adjudicator is to ensure that the applicant — Well, I know all that. The question is, what is the details? That is — Certainly. What was wrong about what the judge said? Okay. The first thing that was wrong about what the judge did was that he failed to offer Lorin Delgado an opportunity to develop the record on his eligibility for adjustment of status. For three months in prior hearings leading up to the April 20th immigration judge proceeding, the court and the government had both agreed that Lorin was eligible for adjustment of status. When suddenly on April 20th they announced that this may have been an error, the judge did not give Lorin Delgado the opportunity to develop the record and present evidence that he was eligible for adjustment of status. And he did have — he had meritorious arguments that he was eligible for adjustment of status. And the court has — Does he believe he was eligible? He was unrepresented at that point and certainly was not familiar enough with immigration law to understand what constituted meritorious evidence of his eligibility for adjustment of status. I didn't ask whether he was right. I'm starting with the proposition, did he think he was eligible for adjustment of status when he came into the room? He was obviously talked out of it if he had such a belief, but I couldn't tell if he had that belief when he came in, whether that was something he was going to request. Well, Your Honor, he solicited the advice of the immigration judge as to what evidence he could present to stay in this country. He asked several times. He obviously believed that he had filled out all these forms. He had paid $1,000. Yes. It wasn't whether I had it, whether he ever got his $1,000 back. But he had been told that he was eligible. Yes, that's right. And he was — then he had gotten a continuance to fill out the papers better. That's correct. And he filled out the papers. He came in with all the papers filled out. He was told that he did a very good job in the papers. That's right. He paid $1,000. So he certainly believed when he walked in the room that he was eligible. Otherwise, he wouldn't be paying $1,000 and filling out pieces of paper. That's exactly right, Your Honor. He did believe at that point that he was eligible. And when he was told that this was a mistake, he was not given the opportunity to present evidence to the contrary. So that was the first of three errors of the immigration judge. But it wasn't really an evidence problem. It's a very — I mean, I tried to figure it out. It's a really complicated statutory and regulatory problem as to — I see. Which — as to whether — as I understand it, the problem is whether it had to be an I-130 or nothing. They were representing that it was something else, that he was a derivative on his mother. But it appears that he couldn't be a derivative on his mother. He had to have an I-130 if he had anything. And he seemed to have had something because he had had an adjustment hearing schedule, although he didn't go to it. So it's very mysterious what happened. But it's not just an evidence problem. That's true, Your Honor. But Your Honors do not need to determine whether he was actually eligible for adjustment of status. This Court has held that where the record contains an inference that the petitioner is eligible for relief from deportation, but the immigration judge fails to advise the alien of this possibility and give him the opportunity to develop the issue, we do not consider an alien's waiver of his right to appeal to be considered an intelligence. It's the bottom line that there should have been a continuance for a while. Originally, the judge said to him, do you want to have a continuance? And he said no. But then after all this I-130 stuff came in, I think at that point he said, can I have more time? And the judge said no. That's correct. So is that basically your argument? He should have at that point adjourned the hearing and sent him back? And given him an opportunity to produce a visa application that had been filed on his behalf, et cetera. I do believe that he was denied an opportunity for his stay in court to present his evidence. At that point, the judge said no, you may not have any further time, and, you know, you have to go forward today. And given the choice that the immigration judge presented him, where he told him that voluntary departure would be, quote, beneficial for his case when, in reality, Lorraine would have been banned from returning to the United States for ten years regardless of whether he accepted voluntary departure or proceeded with his political asylum application, that could not have been a waiver that was thus considered an intelligent, subsequent to being presented with the wrong and misinformed set of consequences. And finally, the immigration judge indicated that he was unlikely to grant petitioners a political asylum application. He just said you may not get it. And he slightly derided it. We referred to it pejoratively as an application about gangs and tattoos, and really it was about the murder of four, at that point, three of his family members in execution style by gang-related violence. I mean, to refer to it as gangs and tattoos, it was obvious to the petitioner at that point that the immigration judge was not going to present, was not going to grant that application. And this court has held in Cano, Merida, that that's a denial of full and fair hearing, when the petitioner is given a choice, the alien, excuse me, when the petitioner is given a choice between proceeding with an application that's been labeled baseless and dropping it entirely. So we believe that there was several violations of the petitioner's right to a full and fair hearing and his due process rights, and that he should be given an opportunity to develop the record. Do you want to save some time for rebuttal? I would, please. Thank you. Thank you for your argument. We'll hear from the Attorney General at this time, Ms. Maher. May it please the Court, my name is Brooke Maher. Well, the principal issue in this case is whether or not the petitioner knowingly and intelligently waived his appeal. The Attorney General, you know, agrees with the Board of Immigration Appeals that he knowingly, before the immigration judge, who gave him multiple chances to obtain counsel. The question is whether the information was just wrong. First of all, I gather that the government agrees at this point that the information was wrong about the benefit of the voluntary departure. That, in fact, he was told specifically that he would get a benefit from entering into it, and there is no benefit to him from entering into it. Is that correct? Well, respectfully, no, Your Honor. The government, the benefit, I mean, you can read this contextually, and I think you can look at it multiple ways. The government has to agree in order for anybody to pursue voluntary departure prior to going into an immigration hearing. It is a benefit to the petitioner because, at that point, he can leave on his own accord and pick where he wants to go, whereas if he were to be denied the money. In custody? But if he were to depart and if he had the money, he doesn't necessarily have to go back to El Salvador. If he had to, he could find another way and go to another country. However, post-time, he was informed that because of his crime involving moral turpitude and because of his entry without inspection, he wasn't going to be able to be granted voluntary departure at the end. But there's no difference in his ability to return. You see, I mean, there was some suggestion made fairly strongly that the difference was that he could come back if he took voluntary departure and he couldn't come back. If he took the early voluntary departure, but the later voluntary departure, he wouldn't be eligible for a later voluntary departure and therefore couldn't come back for 10 years. But even if he took the earlier voluntary departure, he still couldn't come back for 10 years. Is that right? Well, no, not necessarily. I mean, as the government pointed out, as the immigration judge, nobody alluded to the fact that it wouldn't be a long time for any form of relief if he was denied. He was informed. Well, what's the answer to my question? The answer is he could apply. He could apply for a B-Cent. All he has to do is fill out a hardship waiver. And if the government --. And that's true at the other end. That would be true. That is correct. It's true of both. It's the same. It's the same. It's the same. So why couldn't you just say that to begin with? It's the same. It's the same. There was no benefit to him. No. Except you're saying there was a benefit. So now the only benefit to him is that he didn't have to go to El Salvador? No. The benefit was, is he was not eligible for voluntary post-hearing voluntary departure. He was never going. He was not eligible for that. I understand that. But what benefit is it to him if he can't come back for 10 years in either case? And in either case, he can apply for a waiver, whether he has the voluntary departure or doesn't. Is that right? Yes. So there is no benefit to him other than he can go somewhere other than El Salvador? That's correct. If he were not to get his asylum and if he were to lose, then he would be barred for 10 years as well. Correct. So it's the same. Generally, yes. Okay. We could have started there. All right. But as far as the knowing and waiver or knowing and intelligent waiver, the immigration judge gave the petitioner multiple chances to not only obtain counsel, and he clearly explained When he walked in there, he had been told that he had an approved I-30 petition and that all he had to do was fill out these pieces of paper and pay his $1,000, and he did all that. And he came in there, and all of a sudden, and so it was perfectly intelligent at that point not to have a lawyer because what did he need a lawyer for? He knew what he had to do, and he did it. Now he's being told something completely after he says, I want to go forward. All of a sudden, the government shows up and says, oh, no, you don't have an I-30, and you're not really eligible for adjustment. At that point, he says, I'd like some time, and the judge says no. Is that what happened? No, not necessarily. He was given his application. The IJ gave him the application to fill out his I-485 in a prior hearing. Once that came in, and the immigration judge got that, so did the government. I'm sure they checked it, found out that he had aged out, in fact, because he had aged out. Well, is that true either? This is my understanding, but it's very complicated, but at least our posit is the following, that he did not, in fact, age out because he couldn't he had to have had an I-130 or nothing, because the regulations seem to say that in order to be adjusted as a child, you have to have an immediate relative visa. You cannot be a derivative. And, therefore, if he had a scheduled adjustment hearing, it had to be based on an I-130. It couldn't be based on anything else. Is that not right? And if you have an I-130 and turn 21, it turns into a family first visa, and you don't age out of it. No, if you go in there, but the immigration, but DHS had, in fact, denied that one I-485 that he had applied for. Right, but as I understand it, the approved petition still is there, still sitting there. Well, I don't have that, like I said, in the record, so I would be unable. As a matter of regulation. Years have passed now. Has anybody actually gone back and looked to find out what the status should have been, what he should have been told at the time as to the status? Well, based on the record, I'm not able to posit. I understand that. The government would be happy to write a letter brief in response to that if you would like. So you don't know. No, of course, no, I don't. As far as you know, it may have been the case, as had been said to him before, that he hadn't approved I-130 there, sitting there. It's true, the attorney at this hearing, the government attorney, said no, there wasn't. But previously, he'd been told, yes, there was. And the best we can figure out is that the record's not clear. You do have the immigration judge apparently accepting the word of the government attorney at this hearing saying, well, you're out of luck, you can't get it that way. But, in fact, we don't know whether that's the case. Well, as I said, I don't have it in the record, so I don't. Well, if the record doesn't tell us, and you're not prepared to tell us from your knowledge of government records otherwise, then don't we have a glaring conflict between the immigration judge telling petitioner, you can't get in this way, and through that leading the petitioner to accept this waiver of appeal rights. And, in fact, the reality is we don't know one way or the other whether there was an approved petition sitting there. Doesn't that suggest a problem? Well, apparently so. But is it going to be further? I mean, is there any reason not to think that this is not a knowing waiver if, in fact, we don't know today whether the information given by the immigration judge was correct or not? Well, and we have some reason to think it wasn't, which is what had been told before and at least a superficial or an apparent reading of the regulations. Thank you. Thank you for coming in. Anything you're dying to tell us? No. Okay. Thank you. Thank you. Thank you.
judges: Hawkins, Berzon, Clifton